**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ROBERT J. SPEAGLE, JR.,

                    Plaintiff,

vs.                                Case No.  3:08-cv-1046-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
_____/

## OPINION AND ORDER[1]

### I.  Status

      Robert J. Speagle, Jr. ("Plaintiff") is appealing the Commissioner of the Social Security

Administration's final decision denying his claim for a period of disability and disability

insurance benefits ("DIB").  His alleged inability to work is based on physical impairments and

symptoms of previous cerebrovascular accidents, a seizure disorder, migraine headaches,

see Transcript of Administrative Proceedings (Doc. No. 7; "Tr.") at 14, as well as transient

ischemic attacks, a totally occluded right internal carotid artery, gait abnormality, left-sided

weakness, falling, bouts of blurred vision, and side effects of medication.  Memorandum in

Support of Complaint (Doc. No. 14; "Pl.'s Mem.") at 4, 8-9.  In addition, Plaintiff alleges he

is unable to work based on mental impairments and symptoms of post-traumatic stress

disorder, dysthemia, an adjustment disorder, and a substance abuse disorder, see Tr. at 14,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. Nos. 8 and 13), and the Order of Reference was entered on January 14, 2009 (Doc. No. 9).

as well as depression, insomnia, personality disorder, and behavior problems. Pl.'s Mem. at 4, 8-9. On August 26, 2002, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging an onset date of July 5, 2002. Tr. at 67-69.[2] Plaintiff later amended his alleged onset date to July 14, 2004. Tr. at 108. Plaintiff was insured for disability insurance benefits through December 31, 2006. Tr. at 12; see also Pl.'s Mem. at 2-3.

An Administrative Law Judge ("ALJ") held a hearing on September 6, 2007, at which Plaintiff testified. Tr. at 1976-2026. In a Decision dated January 30, 2008, the ALJ found Plaintiff was not disabled through the date last insured. Tr. at 12-21. On August 26, 2008, the Appeals Council denied Plaintiff's request for review. Tr. at 5-7. On October 30, 2008, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff raises two issues: (1) "whether or not the ALJ's analysis accurately portrays the record"; and (2) "whether or not the ALJ adequately described all of [Plaintiff]'s step two severe impairments." Pl.'s Mem. at 1 (capitalization omitted). While these issues are more fully developed herein, in short, Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider all of the evidence in the record; and the ALJ erred at step two of the five-step sequential inquiry because he failed to include Plaintiff's alleged personality disorder and recurrent severe depression as severe

---

[2] Plaintiff explains that the Administrative Law Judge incorrectly stated that the application was filed on August 10, 2004. Pl.'s Mem. at 3 (citing Tr. at 12).

impairments.  Id. at 6-20.  After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the ALJ's decision is due to be reversed and remanded for further proceedings consistent with this opinion.  Specifically, the ALJ did not address the disability rating given to Plaintiff by the U.S. Department of Veterans Affairs ("VA"), which was based on Plaintiff's migraine headaches.  Remand is appropriate for the ALJ to address the evidence from the VA and reconsider the limiting effects of Plaintiff's migraine headaches.  On remand, the ALJ should consider Plaintiff's allegations of insomia, and the ALJ should reconsider Plaintiff's impairments in combination.  Since the case is being remanded, the ALJ should also analyze whether Plaintiff's depression and personality disorder are severe impairments.

## II.  The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations").  See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  Pursuant to the five-step sequential inquiry, the ALJ here was required to determine the following through the last date Plaintiff was insured for DIB:  (1) whether Plaintiff was employed; (2) whether Plaintiff had a severe impairment; (3) whether Plaintiff had an impairment that met or medically equaled one listed in the regulations; (4) whether Plaintiff could perform past relevant work; and (5) whether Plaintiff retained the ability to perform any work in the national economy.  See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.1520; see also Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (stating that "[f]or DIB claims, a claimant is eligible for benefits where she demonstrates disability on or

before the last date for which she was insured"). The ALJ performed the required five-step sequential inquiry for the period from the alleged onset date through the last date insured. At step one, the ALJ established Plaintiff had not engaged in substantial gainful activity since July 5, 2002. Tr. at 14. At step two, the ALJ found Plaintiff suffered from the following severe impairments: "status post cerebrovascular accidents, a seizure disorder, a history of migraine headaches, a history of post traumatic stress disorder, dysthemia, an adjustment disorder, and a substance abuse disorder."[3] Tr. at 14. At step three, the ALJ stated Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 15.

The ALJ determined that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work: Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; Plaintiff could sit, stand, and walk for about six hours each in an eight-hour workday; Plaintiff could never climb ladders, ropes, or scaffolds; Plaintiff could occasionally climb stairs and ramps; Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl; Plaintiff had to avoid concentrated exposure to hazards such as machinery and heights, with no other manipulative, visual, communicative, or environmental limitations. Tr. at 15. Plaintiff was moderately limited in understanding, remembering, and carrying out detailed instructions; Plaintiff was moderately limited in interacting appropriately with the general public; Plaintiff was moderately limited in accepting instructions and responding appropriately to criticism from supervisors; Plaintiff

---

[3] As to the substance abuse disorder, the ALJ stated that he "accepted the claimant's testimony that he has been clean for some time," and therefore the ALJ concluded that Plaintiff's "previous illicit substance abuse is not material to this decision." Tr. at 18.

was moderately limited in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; Plaintiff was capable of carrying out only simple instructions in a routine work setting and required some allowances for occasional irritability and inappropriate behavior; Plaintiff also required the flexibility to use a cane in his right hand to stand and/or walk.  Tr. at 15.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a hydraulic pump repairer, hotdog vendor, automobile service mechanic, tractor trailer inspector, and missile inspector.  Tr. at 19; see also 2014-18; Pl.'s Mem. at 3-4.  At step five, the ALJ determined there were other jobs that existed in significant number in the national economy that Plaintiff could perform, considering his age, education, work experience, and RFC.  Tr. at 19-20.  Namely, Plaintiff could work as a stock room checker, hand packager, merchandise price marker, surveillance system monitor, or photograph mounter.  Tr. at 19-20.  The ALJ concluded Plaintiff was not under a disability[4] from July 5, 2002 through December 31, 2006, the last date Plaintiff was insured for DIB.  Tr. at 21.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but

_____

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

less than a preponderance.'" <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Falge</u>, 150 F.3d at 1322 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); <u>see also</u> <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

### A.  ALJ's Decision

Plaintiff first contends the ALJ did not "accurately portray the record." Pl.'s Mem. at 1, 7. Plaintiff summarizes this issue as follows: "the ALJ did not adequately consider the fact that [Plaintiff] could not have been expected to sustain significant elements of light work activities which include the requirement of standing and/or walking for six hours in an eight hour workday. Nor was the 'disruption to routine' fully considered in light of [Plaintiff]'s mental impairments." <u>Id.</u> at 6. Specifically, Plaintiff contends the ALJ failed to consider the disability rating given to Plaintiff by the VA. <u>Id.</u> at 12. In addition, Plaintiff argues that the ALJ failed to consider Plaintiff's post-traumatic stress disorder ("PTSD") and the "continuing

constellation of problems involving recurrent episodes of a gait abnormality, left sided weakness (arm and leg), falling, migraine headaches, bouts of blurred vision, depression with a personality disorder and behavioral problems," as well as insomnia and prescription side effects. Id. at 8-9 (footnotes and emphasis omitted). Plaintiff also asserts that the ALJ failed to consider the GAF scores that were given to Plaintiff. Id. at 12, 13, 15.

## 1. Evidence Not Adequately Considered by the ALJ

After considering each of Plaintiff's arguments as to the first issue, as more fully explained herein, the undersigned finds that remand is appropriate only with respect to four discrete aspects of the record: (1) consideration of the disability rating given to Plaintiff by the VA; (2) reconsideration of Plaintiff's migraine headaches; (3) consideration of Plaintiff's insomnia; and (4) reassessment of Plaintiff's impairments in combination. Although the undersigned finds that these are the only reasons that merit remand with respect to Plaintiff's first issue, each of Plaintiff's arguments is addressed below.

## a. VA Disability Rating

Plaintiff argues that the VA "recognized a disability," and this "rating . . . is evidence that should be given great weight." Pl.'s Mem. at 12 (citing Tr. at 918; Olson v. Schweiker, 663 F.2d 593, 597 n.4 (5th Cir. 1981)); see also Tr. at 297, 447-49, 918, 1799 (reflecting VA disability ratings). In making this argument, Plaintiff cites a Homeless Initial Assessment. Pl.'s Mem. at 12 (citing Tr. at 918). It is unclear precisely what Plaintiff is relying on, but it appears to be the statement, "Vet. is sc 50%." Tr. at 918; see also Memorandum in Support of Commissioner's Decision (Doc. No. 16; "Deft.'s Mem.") at 17 (stating that "the VA has granted Plaintiff VA benefits based on 50% service connected disability"). The Commissioner

argues that "Plaintiff failed to show that such a rating by the VA, even if given great weight, comes anywhere close to a finding of disability under the Social Security Act." Deft.'s Mem. at 7.

A review of the record reveals that on February 6 and 20, 2001, the VA gave Plaintiff a disability rating of thirty percent based on Plaintiff's migraine headaches. Tr. at 447-49. The VA categorized this disability rating as service connected. Tr. at 447-49. August 18, 2002 Treatment Notes from St. Vincent's Hospital state that Plaintiff "has anxiety and flashbacks and sleep disorder related to post-traumatic stress disorder for which he is 50% service-connected and followed at the VA Clinics," Tr. at 297, although it is unclear whether this was an assertion made by Plaintiff or whether the VA actually gave Plaintiff this disability rating. See also Tr. at 1799.

"A VA rating is certainly not binding on the [Commissioner], but it is evidence that should be considered and is entitled to great weight." Rodriguez v. Schweiker, 640 F.2d 682, 686 (5th Cir. 1981) (commenting that "[a] VA rating of 100% disability should have been more closely scrutinized by the ALJ");[5] see also 20 C.F.R. § 404.1504. The most recent case in which the Eleventh Circuit addressed VA disability ratings in the context of social security disability determinations was Kemp v. Astrue, 308 F. App'x 423 (11th Cir. 2009). In Kemp, the Eleventh Circuit affirmed the Commissioner's decision denying disability insurance benefits to the plaintiff. Kemp, 308 F. App'x at 424, 428. In affirming the ALJ's decision, the Eleventh Circuit addressed whether the ALJ erred by not specifically stating what weight was

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former United States Court of Appeals for the Fifth Circuit that were rendered prior to the close of business on September 30, 1981.

given to a disability rating of the VA. Id. at 426. The Eleventh Circuit determined the ALJ was permitted to determine implicitly the weight afforded to the VA disability rating. Id. Because the ALJ in Kemp "relied on the VA records and referenced the disability findings, in addition to the rest of the relevant evidence," the ALJ "implicitly found that the VA disability ratings were entitled to great weight," and the Eleventh Circuit affirmed the ALJ's decision that the plaintiff was not disabled. Id. (emphasis added) (observing that the ALJ "gave specific reasons for why the VA's 30% disability rating based on PTSD did not qualify the condition as a severe impairment under the SSA guidelines").

Here, the ALJ did not address the VA's disability rating. Tr. at 15-21. The undersigned recognizes that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)). However, the ALJ here broadly rejected the VA's disability rating in a manner that frustrates judicial review. Because the ALJ made no reference to the VA's disability rating, it is impossible to determine whether the ALJ simply overlooked the VA's disability rating, or whether the VA's disability rating was given the appropriate weight. Without an explanation from the ALJ as to how the VA's disability rating affected his decision, it is impossible to determine whether the ALJ's decision is supported by substantial evidence. Remand is appropriate to allow the ALJ to address the disability rating of the VA. See Kemp, 308 F. App'x at 426, 428. On remand, the ALJ should address the VA's disability rating and state the weight the disability rating is given.

### b. Migraine Headaches

Plaintiff asserts that the ALJ failed to consider adequately Plaintiff's complaints of migraine headaches, and the ALJ overlooked the fact that Plaintiff was missing work excessively before his alleged onset date due to pain from headaches. Pl.'s Mem. at 9, 12. The ALJ recognized that Plaintiff's "impairments included a head injury from his military service in the late 1980s, severe headaches, anger problems, and previous cocaine use." Tr. at 16 (emphasis added). In addition, the ALJ determined that one of Plaintiff's severe impairments was "a history of migraine headaches." Tr. at 14. However, the ALJ did not specifically explain how Plaintiff's alleged migraines affected the RFC determination or the final conclusion as to disability, if at all. Tr. at 17. As explained supra pp. 7-9, the VA gave Plaintiff a disability rating of thirty percent due to migraine headaches, Tr. at 447-49, but this evidence was not addressed by the ALJ.

There is some evidence in the record suggesting Plaintiff's migraine headaches were not disabling. See Tr. at 208, 1388, 1442-43. However, without the ALJ considering the evidence from the VA and explaining how Plaintiff's complaints of migraine headaches influenced the RFC assessment, it cannot be determined whether the RFC and ultimate conclusion as to disability are supported by substantial evidence. The ALJ must make these findings in the first instance to enable meaningful judicial review. Therefore, on remand, the ALJ should specifically address Plaintiff's complaints of migraine headaches, including the disability rating evidence from the VA, and explain how they influence the determination of Plaintiff's RFC.

### c.    Insomnia

Plaintiff argues that the ALJ failed to give adequate consideration to Plaintiff's insomnia. Pl.'s Mem. at 9.  The ALJ did not specifically address Plaintiff's insomnia, although there is some suggestion in the record that Plaintiff's insomnia may have been under control. See Tr. at 193, 227, 481, 488, 497, 517, 1442.  The ALJ's failure to address Plaintiff's insomnia makes meaningful judicial review of this aspect of the decision impossible.  See Dyer, 395 F.3d at 1211.  On remand, the ALJ should address Plaintiff's insomnia so that it can be determined whether the ALJ's RFC assessment and ultimate conclusion as to disability are supported by substantial evidence.

### d.    Combination of Impairments

Plaintiff argues that the ALJ failed to consider Plaintiff's impairments in combination, and the ALJ failed to consider the "disruption to routine."  Pl.'s Mem. at 6, 8-9, 11, 17-19.[6] "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of [disability], the Commissioner of Social Security shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(B); see also 20 C.F.R. § 404.1545(a).  In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th

---

[6]  Under both his first issue and second issue, Plaintiff raises the argument that the ALJ failed to consider Plaintiff's impairments in combination.  See Pl.'s Mem. at 6, 8-9, 11, 17-19.  For ease of discussion, this argument is addressed here.

Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; <u>Reeves v. Hickler</u>, 734 F.2d 519, 525 (11th Cir. 1984)).  In addition, the RFC assessment should take into account the "effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8P, 1996 WL 374184 at *5.

The ALJ correctly acknowledged that the RFC analysis requires consideration of a claimant's "impairment or combination of impairments." Tr. at 13.  In addition, the ALJ stated that, in determining Plaintiff's RFC, the ALJ "considered <u>all</u> symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." Tr. at 15 (emphasis added).  However, the ALJ did not adequately consider Plaintiff's migraine headaches or insomnia, which may affect the RFC determination when all of Plaintiff's impairments are considered in combination.  Therefore, on remand, the ALJ should make clear that all of the Plaintiff's impairments, including non-severe impairments, are considered "in combination" when assessing Plaintiff's RFC.

### 2.    Evidence that the ALJ Adequately Considered

Although the remainder of Plaintiff's arguments are without merit, they are addressed below.

### a.    Gait Abnormality

Plaintiff argues that the ALJ failed to give adequate consideration to Plaintiff's "gait abnormality." Pl.'s Mem. at 9.  The ALJ recognized Plaintiff's testimony that he "had difficulty walking because he dragged his foot and that he was unable to walk with out [sic] his cane." Tr. at 16.  The ALJ credited Plaintiff's testimony "that he required a cane to stand and/or

walk." Tr. at 19. In his RFC determination, the ALJ found that Plaintiff "required the flexibility to use a cane in his right hand to stand and/or walk at will." Tr. at 15. Although the ALJ did not use the words "gait abnormality," it is clear that the ALJ considered Plaintiff's difficulty walking in determining Plaintiff's RFC. Tr. at 15-16, 19.

After considering Plaintiff's difficulty walking, Tr. at 15-16, 19, the ALJ did not conclude it was a basis for finding that Plaintiff was disabled. Tr. at 20-21. A review of the record reveals that on December 27, 2002, Plaintiff was "walking faster with improved gait." Tr. at 238. On March 6, 2003, Plaintiff had "[a]dequate gait and station." Tr. at 248. On November 24, 2003, it was reported that Plaintiff was "[u]sing cane, gait appears steady." Tr. at 484. On May 9, 2006, it was noted that Plaintiff's gait was "steady." Tr. at 1867. Plaintiff was seen for an initial evaluation at the Gait and Balance Clinic; however, he did not appear for a subsequent appointment and was discharged on June 5, 2006. Tr. at 1200. During a hospital stay in December 2006, Plaintiff was "walking around and doing fine." Tr. at 1621. A hospital discharge summary dated March 13, 2007 states that Plaintiff "was able to walk perfectly fine without any problems in the hospital." Tr. at 1566. After a thorough review of the record, the ALJ's determination with respect to Plaintiff's difficulty walking is supported by substantial evidence.

### b. Left-Sided Weakness, Falling, Blurred Vision, and Totally Occluded Right Internal Carotid Artery

Plaintiff asserts that the ALJ failed to give adequate consideration to Plaintiff's complaints of left-sided weakness, falling, and blurred vision. Pl.'s Mem. at 8-9. It appears the left-sided weakness, falling, and blurred vision may be related to a total occlusion of Plaintiff's right internal carotid artery, transient ischemic attacks ("TIA"), and cardiovascular

accidents ("CVA"), all of which are noted throughout Plaintiff's treatment records. Tr. at 114, 129, 145, 283, 297, 772, 781, 807, 818, 821, 1140-41, 1163-64, 1166. In his decision, the ALJ acknowledged Plaintiff's problem with falling, and no less than five times the ALJ referenced Plaintiff's complaints of left-sided weakness. Tr. at 17-18. In addition, the ALJ reviewed in detail hospital visits during which Plaintiff complained of these symptoms in connection with the complete occlusion of Plaintiff's right internal carotid artery, TIAs, and CVAs. Tr. at 16-18. It is clear that, in determining Plaintiff's RFC, the ALJ considered Plaintiff's complaints of left-sided weakness, falling, and blurred vision, as well as the total occlusion of Plaintiff's right internal carotid artery, TIAs, and CVAs. Tr. at 15-18.

The ALJ did not conclude that Plaintiff was disabled based on his left-sided weakness, falling, and blurred vision, as well as the total occlusion of Plaintiff's right internal carotid artery, TIAs, and CVAs. Tr. at 17-18, 20-21. A review of the record reveals that these problems were well known to Plaintiff's treating physicians. Tr. at 1107, 1164, 1140 (stating on November 30, 2005 that "examination once again confirms absence of flow in the right internal carotid artery . . . ."). However, numerous CT scans and MRIs showed no acute problem. Tr. at 763, 768, 786, 807, 1134, 1138, 1163, 1171, 1403, 1405, 1666, 1680, 1766-67, 1830. Plaintiff argues that the lack of an acute problem does not demonstrate that Plaintiff was not disabled because his condition was progressively worsening, and the ALJ failed to consider an MRI which showed "mild progression of destructive changes." Pl.'s

Mem. at 13-14 (citing Tr. at 1817). This MRI is of questionable significance because it is from June 2007–six months after Plaintiff was last insured.[7] Tr. at 1817.

Moreover, upon discharge on November 15, 2004 after a hospital stay, it was determined that, "[i]n view of stability of neurological status with no evidence of recurrent or acute CVA, the patient [is] therefore discharged on this date." Tr. at 1171 (emphasis added). On December 15, 2006, it was noted that "no surgical intervention is required for this completely occluded right [internal carotid artery]." Tr. at 1621. The hospital notes from December 15, 2006 indicate that Plaintiff had previously reported to the hospital on December 9, 2006 complaining of symptoms of TIA or CVA, but Plaintiff "did not have any symptoms or findings on the physical examination during the hospital stay for any TIA or CVA." Tr. at 1621. Plaintiff "also had an echo[cardiogram] in May 2006 as part of the workup of the CVA and it was completely unremarkable." Tr. at 1621. "Clinically, [Plaintiff] d[id] not have any symptoms and no focal weakness or no focal signs." Tr. at 1621. He was "doing fine." Tr. at 1621. On August 18, 2002, at a time when Plaintiff was complaining of left-sided weakness, his left upper extremity strength was determined to be "3+/5." Tr. at 294-95. On October 3, 2002, Plaintiff had no difficulty screwing and unscrewing nine bolts using only his left hand, although he complained of numbness in his thumb during this task. Tr. at 215. On December 27, 2002, Plaintiff was "able to use left arm and hand better." Tr. at 238. On September 30, 2003, Plaintiff's left leg strength was "4/5." Tr. at 759. On May 21, 2004, it was reported that Plaintiff had a history of "recurrent episodes with left sided weakness since

_____

[7] As noted earlier, Plaintiff was insured for DIB through December 31, 2006. Tr. at 12; Pl.'s Mem. at 3.

his [CVA] but this has not happened in over nine months." Tr. at 590. Finally, on March 3, 2006, a hospital doctor was reported to state that Plaintiff "abuses the ER system." Tr. at 1261 (capitalization omitted). The doctor was also reported to state that "he did not think that any of the symptoms (dizziness, HA, falling down) were real . . . ." Tr. at 1261 (capitalization omitted); see also Tr. at 1164 (expressing doubt with respect to the existence of Plaintiff's conditions and symptoms).[8]

The undersigned has thoroughly reviewed the record. Substantial evidence supports the ALJ's RFC determination with respect to Plaintiff's left-sided weakness, falling, and bouts of blurred vision, as well as Plaintiff's totally occluded right internal carotid artery, TIAs, and CVAs. After considering these problems and Plaintiff's RFC, the ALJ concluded Plaintiff was not disabled, and this aspect of his conclusion is supported by substantial evidence.

### c.    Seizures

Plaintiff alleges that the ALJ failed to give adequate consideration to Plaintiff's seizures. Pl.'s Mem. at 15. The ALJ recognized that Plaintiff was diagnosed with a chronic seizure disorder. Tr. at 17. In addition, the ALJ found "a seizure disorder" to be one of Plaintiff's severe impairments. Tr. at 14. It is clear that the ALJ considered Plaintiff's seizure disorder.

After considering Plaintiff's seizure disorder, the ALJ found that the seizures did not result in any functional limitations. Tr. at 18. On May 7, 2005, Plaintiff reported that he had not suffered any seizures during the previous six to eight months. Tr. at 813. October 21,

---

[8] On October 1, 2002, a medical care provider opined that Plaintiff "appear[ed] to exaggerate limitations possibly[ ]in order to obtain increased personal care." Tr. at 180 (capitalization omitted).

2005 treatment notes indicate that Plaintiff denied having any seizures during the previous one and one-half years. Tr. at 1162-64. Treatment notes from August 17, 2006 state that Plaintiff's seizures were "stable." Tr. at 1705. On January 8, 2007, it was noted that Plaintiff had suffered no further seizures since he had been prescribed dilantin four months prior. Tr. at 1441-42. After a thorough review of the record, the ALJ's determination with respect to Plaintiff's seizure disorder is supported by substantial evidence.

### d. Post-Traumatic Stress Disorder and Depression

Plaintiff contends that the ALJ did not adequately consider Plaintiff's PTSD, depression, and episodes of depressive decompensation. Pl.'s Mem. at 9, 16-17. The ALJ specifically analyzed Plaintiff's mental impairments. Tr. at 15, 18. The ALJ recognized that Plaintiff received treatment at a mental health center for PTSD, and the ALJ acknowledged that Plaintiff was diagnosed with dysthemia and an adjustment disorder. Tr. at 18. In addition, the ALJ identified PTSD, dysthemia, and an adjustment disorder as severe impairments. Tr. at 14. The undersigned finds that the ALJ considered Plaintiff's PTSD, depression, and episodes of depressive decompensation, and he took them into account when determining Plaintiff's RFC. Tr. at 18.

After considering Plaintiff's PTSD, depression, and episodes of depressive decompensation, the ALJ did not find that these impairments were a basis for disability. Tr. at 21. A review of the record reveals that Plaintiff has suffered from PTSD and depression in the past, and progress notes from July 3, 2002 indicate that he suffered at least one episode of depressive decompensation. Tr. at 119, 167, 297, 437, 465, 1152, 1387-89, 1394. However, on September 30, 2002, October 1, 2002, and October 3, 2002, Plaintiff

denied "s/s depression" and "any exacerbations of [PTSD]."  Tr. at 118, 167, 187.  On September 30, 2002, Plaintiff stated that he had "had no recent mental health issues," and he thought his medications were helping him.  Tr. at 167.  On December 22, 2003, Plaintiff had "[s]ome continued PTSD symptoms, but not prominent," and it was noted that stress and cocaine use caused Plaintiff's PTSD symptoms to increase.  Tr. at 517.  As it appears Plaintiff has been successful in abstaining from the use of cocaine, Tr. at 710, 711, 1610, 1638, 1671, 1884 (showing negative results for cocaine on drug tests), cocaine should no longer be a factor that exacerbates his PTSD.

Furthermore, on October 17, 2002, Plaintiff was only "somewhat" depressed and was benefitting from counseling; "on meds his depression, anxiety, and insomnia had been pretty well controlled."  Tr. at 227.  On April 19, 2003, Plaintiff denied any depression, had only a "slightly dysphoric mood with anger," and "revealed no anxiety."  Tr. at 1384.  On July 8, 2004, it was noted that Plaintiff's depression was "relatively stable on meds."  Tr. at 617.  On July 13, 2004, it was indicated that Plaintiff had not felt depressed during the previous month.  Tr. at 628.  On September 14, 2004, it was reported that Plaintiff's depression was "pretty well controlled on effexor," and that PTSD symptoms were "not prominent."  Tr. at 707.  On January 8, 2007, it was noted that Plaintiff's depression and anxiety were "pretty well controlled" with medication, and that, although his PTSD symptoms were aggravated by stresses and the Iraq war, Plaintiff was "coping better with them over the y[ea]rs."  Tr. at 1442.

The undersigned has thoroughly reviewed the record. Substantial evidence supports the ALJ's decision with respect to Plaintiff's PTSD, depression, and episodes of depressive decompensation.

### e.    Personality Disorder and Behavior Problems

Plaintiff argues that the ALJ gave inadequate consideration to Plaintiff's personality disorder and behavioral problems. Pl.'s Mem. at 9. The ALJ explicitly recognized that Plaintiff was moderately limited "in interacting appropriately with the general public; in accepting instructions and responding appropriately to criticism from supervisors; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes." Tr. at 19. In addition, the ALJ identified an adjustment disorder as a severe impairment, Tr. at 14, and the ALJ stated that Plaintiff's "apparent behavioral issues" had been taken into account in making the disability determination. Tr. at 18. It is clear the ALJ considered Plaintiff's personality disorder and behavioral problems in determining Plaintiff's RFC.

After considering Plaintiff's personality disorder and behavioral problems, the ALJ did not find that these impairments were a basis for disability. Tr. at 21. A review of the record reveals that, on October 1, 2002, Plaintiff denied any emotional or behavioral problems. Tr. at 182. During a psychiatric examination on April 19, 2003, Plaintiff was "friendly and cooperative." Tr. at 1384. On October 21, 2005, Plaintiff was noted to be alert, cooperative, and oriented. Tr. at 1162-63. After a thorough review of the record, the ALJ's determination with respect to Plaintiff's personality disorder and behavioral problems is supported by substantial evidence.

### f.  Global Assessment of Functioning Scores

Plaintiff suggests that the ALJ did not give adequate consideration to a Global Assessment of Functioning ("GAF") score of fifty-five, which Plaintiff was given on April 27, 2004, Tr. at 1003, or a GAF score of forty, which Plaintiff was given on March 24, 2005, Tr. at 1369.  Pl.'s Mem. at 12-13, 14-15.   "The [GAF] Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations."  Mathis v. Astrue, No. 3:06-cv-816-J-MCR, 2008 WL 876955, at *7, n. 4 (M.D. Fla. Mar. 27, 2008) (unpublished) (citing Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") (4th ed. 1994) at 32).  While GAF scores have been frequently used in Social Security disability benefits determinations, courts often give them limited weight.  "Reliance upon a GAF score is of questionable value in determining an individual's mental functional capacity."  Gasaway v. Astrue, No. 8:06-cv-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008) (unpublished) (citing Deboard v. Comm'r of Soc. Sec., No. 05-6854, 211 F. App'x 411, 415-416 (6th Cir. 2006) (unpublished)); see also Wind, 133 F. App'x at 692 n. 5 (noting that the Commissioner of Social Security has indicated that GAF scores have no direct correlation to the severity of a mental impairment); Parsons, 2008 WL 539060, at *7 (same).  Even so, "courts generally find that a GAF score of 50 or below is not in and of itself determinative of disability."  Jones v. Astrue, 494 F. Supp. 2d 1284, 1288 (N.D. Ala. 2007) (citing, among others, Hillman v. Barnhart, 48 F. App'x 26, 30 n.1 (3d Cir. 2002) (unpublished) (noting a GAF score of fifty indicates a claimant is capable of performing some substantial gainful activity); Seymore v. Apfel, 131 F.3d 152, 1997 WL 755386 at *2 (10th Cir. 1997) (explaining

that a GAF score of forty-five does not necessarily prove a claimant is unable to hold a job); but see Lloyd v. Barnhart, 47 F. App'x 135, 135 n.2 (3d Cir. 2002) (noting that a vocational expert opined that a GAF score below fifty indicates an inability to keep a job)).

Plaintiff's GAF scores of forty and fifty-five are not necessarily determinative of disability. Although the ALJ did not specifically mention Plaintiff's GAF scores, the ALJ took Plaintiff's mental impairments, personality disorder, and behavior problems into account in rendering his decision. Tr. at 18. The ALJ also referred to records which contain GAF scores, Tr. at 18, so the ALJ must have been aware of the GAF scores. Nonetheless, the ALJ concluded Plaintiff was not disabled. Tr. at 20-21. As explained supra pp.17-19, the ALJ's decision with respect to Plaintiff's mental impairments is supported by substantial evidence.

### g. Nonexamining Physicians

Plaintiff argues that the ALJ erred by giving less weight to the opinion of Robert L. Steele, M.D. than was given to the opinion of Terry T. Rees, M.D., both nonexamining physicians. Pl.'s Mem. at 16. On March 29, 2003, Dr. Steele, a state agency physician, found Plaintiff's symptoms to be credible, and Dr. Steele determined Plaintiff had limitations which would limit Plaintiff to performing only sedentary work. Tr. at 342-49. Above Dr. Steele's signature is a stamp stating "Board of Obstetrics and Gynecology," which suggests Dr. Steele may be an OBGYN. Tr. at 349. The ALJ gave Dr. Steele's opinion "limited weight" because "[t]he evidence of record in its entirety indicates that the claimant was less limited than determined by the State agency." Tr. at 18.

In contrast to Dr. Steele, the ALJ "assigned significant evidentiary weight" to the opinion of Dr. Rees because the ALJ found Dr. Rees's opinion to be "consistent with the record as a whole." Tr. at 19. Dr. Rees is board certified in general and thoracic surgery. Tr. at 1082. On July 18, 2005, Dr. Rees opined, among other things, that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and he could stand and/or walk for a total of about six hours in an eight-hour workday. Tr. at 1076.

Plaintiff argues that the ALJ erred in giving significant weight to Dr. Rees's opinion because Dr. Rees was under the mistaken impression that there was no medical documentation as to the necessity of Plaintiff's use of a cane. Pl.'s Mem. at 16; Tr. at 1077. Although Dr. Rees was mistaken it noting that medical documentation of Plaintiff's need for a cane was lacking, Dr. Rees did recognize that Plaintiff in fact used a cane. Tr. at 1077. Moreover, the ALJ found that Plaintiff required the use of a cane. Tr. at 15, 19.

Every medical opinion should be considered in making the disability determination, 20 C.F.R. § 404.1527(d), but not every medical opinion is entitled to the same evidentiary weight. The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F. R. §§ 404.1527(f), 416.927(f). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citing 20 C.F.R. § 404.1526 (1980)); see also 20 C.F.R. § 404.1527(d)(2).

Applying these factors here leads to the conclusion that the ALJ articulated adequate reasons for giving limited weight to the opinion of Dr. Steele and significant weight to the opinion of Dr. Rees. The ALJ gave limited weight to the opinion of Dr. Steele because it was not consistent with the evidence of record, and the ALJ gave significant weight to the opinion of Dr. Rees because it was consistent with the evidence. For the reasons explained supra pp. 12-16, a thorough review of the record reveals that these reasons are supported by substantial evidence.

### h. Poor Compliance

Plaintiff contends that the ALJ erroneously considered Plaintiff's "poor compliance" with prescribed medical treatment. Pl.'s Mem. at 14 (citing Tr. at 17). As Plaintiff acknowledges, the Regulations require claimants to follow prescribed treatment. See 20 C.F.R. § 404.1530 (stating that "[i]if you do not follow the prescribed treatment without a good reason, we will not find you disabled . . ."). Plaintiff argues that his failure to comply with medical treatment was the result of his mental impairments, and therefore the ALJ erred by using it as a reason for denying Plaintiff disability benefits. Pl.'s Mem. at 14-15.

Plaintiff's "poor compliance" with prescribed medical treatment was in no way the basis for the ALJ's decision. Tr. at 12-21. The ALJ simply observed that Plaintiff "reported poor compliance with his medication [in June and July 2004]." Tr. at 17 (referring to Tr. at 1171). Even if Plaintiff is correct that he had a "good reason" for failing to comply with prescribed medical treatment, the ALJ did not err in this regard because Plaintiff's failure to comply with medical treatment was not the basis of the ALJ's decision.

### i. Alleged Disability Finding of Physician

Plaintiff argues the ALJ erroneously found that "[n]o physician indicated that [Plaintiff] was unable to work." Pl.'s Mem. at 12 (citing Tr. at 17). Plaintiff cites December 12, 2006 medical records from St. Vincent's Hospital in which Plaintiff is described as disabled. Pl.'s Mem. at 12-13 (citing Tr. at 1627). After reviewing the records cited by Plaintiff, the word "disabled" is a notation related to Plaintiff's social history, and it appears that it was Plaintiff who described himself as disabled. See Tr. at 1627. This is clearly insufficient to show that the ALJ's decision is not supported by substantial evidence. Moreover, a medical source's statement that a claimant is "disabled," as opposed to a medical source's statement as to the nature and severity of a claimant's impairments, is not entitled to significant evidentiary weight because it is an opinion on the issue of disability, which is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(1). Remand is not appropriate on this basis.

### j. ALJ's "Function by Function" Analysis and RFC Determination

Finally, Plaintiff argues that the ALJ's decision "lacks a substantial 'function-by-function' analysis, and that the ALJ failed to perform an RFC assessment. Pl.'s Mem. at 11-12. Plaintiff is incorrect. The ALJ's "function by function" analysis and RFC assessment are on page four of the Decision. Tr. at 15.

After a thorough review of the record, the undersigned finds that remand is appropriate on Plaintiff's first issue for the ALJ to address the disability rating given to Plaintiff by the VA. In addition, the ALJ should reconsider the limiting effects of Plaintiff's migraine headaches and insomnia, as well as reassess Plaintiff's impairments in combination.

**B. ALJ's Analysis at Step Two**

As his second issue, Plaintiff contends that the ALJ did not "adequately describe[ ] all of [Plaintiff]'s step two impairments." Pl.'s Mem. at 17. Specifically, Plaintiff argues that the ALJ "appeared not to appreciate the step two severity of [Plaintiff]'s personality disorder and recurrent severe depression." Id.

Step two of the sequential evaluation process involves determining whether a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. Thus, an impairment or combination of impairments is severe if it interferes with a claimant's ability to perform "basic work activities." See Bowen v. Yuckert, 482 U.S. 137, 148 (1987). The Regulations provide six examples of "basic work activities": (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and unusual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); see also Davis, 186 F. App'x at 966-67.

At step two, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical

standards of bodily perfection or normality." <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1547 (11th Cir. 1986).

In some instances, an ALJ's failure to identify a particular impairment as severe at step two may be harmless error. <u>See</u> <u>Martinez v. Astrue</u>, 289 F. App'x 296, 299 (10th Cir. 2008) (unpublished) (explaining that the ALJ's failure to make specific findings at step-two of the sequential evaluation process was "harmless error" because the ALJ discussed the impairments at other steps of the sequential evaluation process); <u>Gatewood v. Comm'r of Soc. Sec.</u>, No. 6:09cv122-Orl-31KRS, 2010 WL 455318, at *11 (M.D. Fla. Feb. 3, 2010) (unpublished) (stating that "failure to find an impairment severe at step two can be harmless error if the ALJ considers the functional limitations of the impairment at later steps of the evaluation") (citing <u>Maziarz v. Sec. of Health and Human Serv.</u>, 837 F.2d 240, 244 (6th Cir. 1987)). Nonetheless, because this case is being remanded for other reasons, the ALJ should explicitly address whether Plaintiff's personality disorder and recurrent severe depression are severe impairments. Regardless of whether the ALJ finds Plaintiff's personality disorder and recurrent severe depression to be severe impairments, they should be considered in combination with Plaintiff's other severe and non-severe impairments in determining Plaintiff's RFC. <u>See</u> 42 U.S.C. § 423(d)(2)(B); <u>see also</u> 20 C.F.R. § 404.1545(a).

## V.  Conclusion

After thoroughly reviewing the entire record, the ALJ's decision, and the parties' respective memoranda, remand is appropriate for the ALJ to address the disability rating given to Plaintiff by the VA, and for the ALJ to reconsider Plaintiff's complaints of migraine headaches in light of the VA's disability rating. In addition, the ALJ should consider Plaintiff's

complaints of insomnia.  Furthermore, the ALJ should analyze whether Plaintiff's personality disorder and recurrent severe depression are severe impairments at step two.  Finally, the ALJ should reassess Plaintiff's RFC, making clear that all of Plaintiff's impairments, both severe and non-severe, have been considered "in combination."  In accordance with the foregoing, it is

**ORDERED:**

1.　The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter with the following instructions:

(a)　Explicitly address the disability rating given to Plaintiff by the VA;

(b)　Reconsider Plaintiff's complaints of migraine headaches;

(c)　Consider Plaintiff's complaints of insomnia;

(d)　Reconsider Plaintiff's severe impairments at step two and determine whether Plaintiff's personality disorder and recurrent severe depression are severe impairments; and

(e)　Reconsider the limiting effects of the combination of all of Plaintiff's impairments, both severe and non-severe, explicitly reassessing Plaintiff's RFC.

2.　The Clerk of Court is directed to close the file.

3.      If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on March 4, 2010.

James R. Klindt
**JAMES R. KLINDT**
United States Magistrate Judge

jdf
Copies to:
Counsel of Record